Richard L. Stubbs, ISB No. 3239
Carsten A. Peterson, ISB No. 6373
QUANE SMITH LLP
Sixteenth Floor, U.S. Bank Plaza
101 South Capitol Boulevard
P.O. Box 519
Boise, Idaho  83701
Telephone:  (208) 345-8600
Facsimile:  (208) 345-8660

Attorneys for Defendant
National Fire Insurance Co. of Hartford

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PEAK ASPHALT, LLC; and IDAHO ASPHALT SUPPLY, INC., | Case No. CV08-127-E-EJL |
| Plaintiffs, | MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND |
| vs. | |
| NATIONAL FIRE INSURANCE CO. of HARTFORD; and John Doe, persons or entities, | |
| Defendants. | |

## I. BACKGROUND

This case comes before the Court on cross-motions for summary judgment on the

question of whether National Fire Insurance Company of Hartford ("National Fire")

breached the duty to defend Peak Asphalt in a lawsuit brought by Western Engineering,

Inc. ("Western") against Peak Asphalt in Nebraska Federal District Court.  The essential

question of this case is whether Western's lawsuit against Peak Asphalt arose out of

breach of contract, and thus was not covered under Peak Asphalt's comprehensive general liability ("CGL") insurance policy. National Fire asserts that it is crystal clear that there is no coverage under its policy and that National Fire had no duty to defend Peak Asphalt.[1]

Claims arising out of breach of contract are not an "occurrence." *Magic Valley Potato Shippers v. Cont'l. Ins.*, 112 Idaho 1073, 739 P.2d 372 (1987). The Idaho view on this issue is consistent with the majority of other jurisdictions that a breach of contract is not an "occurrence" covered by a CGL policy. *See e.g., Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 582 (6th Cir. 2001); *Pace Constr. Co. v. U.S. Fid. & Guar. Ins. Co.*, 934 F.2d 177, 180 (8th Cir. 1991); *U.S. Fire Ins. Co. v. Milton Co.*, 35 F. Supp. 2d 83, 86 (D.D.C. 1998); *Yegge v. Integrity Mut. Ins. Co.*, 534 N.W.2d 100, 102-03 (Iowa 1995). The reason for this well recognized rule is that a CGL policy is intended and designed to provide coverage for an insured against tort liability for physical injury to a person or the tangible property of others. Coverage under a CGL policy, however, does not extend to the natural and foreseeable consequences of faulty workmanship. *Burlington Ins. Co. v. Oceanic Design & Const., Inc.,* 383 F.3d 940 (9th Cir. 2004). Therefore, a CGL policy does not extend to business risks of an insured and the costs associated with such risks, such as repair or replacement.

The underlying Nebraska litigation was nothing more than a breach of contract action. The only cause of action that contained any allegations of negligence was the

---

[1]Indeed, National Fire's position appears to be consistent with what Peak Asphalt believed during the Western litigation. In the underlying Nebraska litigation, Peak Asphalt disclosed that it had insurance with Zurich, but did not disclose National Fire. *See* Affidavit of Counsel in Support of Rule 56(f) Motion for Continuance of Plaintiffs' Motion for Summary Judgment Re: Duty to Indemnify, Ex. P.

MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND  - 2

claim for negligent misrepresentation. However, courts have soundly rejected coverage for such a claim. The gravamen of Western's complaint was that Peak Asphalt breached its contract with Western when it supplied non-conforming binder. The subsequent damages were a natural and foreseeable consequence of its breach. Therefore, as the Ninth Circuit recognized in *Burlington*, in deciding the pending motion for summary judgment on the issue of the duty to defend, this Court "[should] carefully examine" the Western's complaint to "ensure that plaintiffs could not, through artful pleading, bootstrap the availability of insurance coverage under an insured defendant's policy by purporting to state a claim for negligence based on facts that, in reality, reflected manifestly intentional, rather than negligent conduct.'" *Id.* 383 F.3d at 951 (quoting *Dairy Road Partners v. Island Ins. Co.,* 992 P.2d 93, 112 (Haw. 2000)).

National Fire did not have a duty to defend because the claims in the underlying litigation did not constitute an "occurrence." Further, several exclusions of the Policy preclude coverage. Therefore, since National Fire did not breach the duty to defend, it cannot be liable for the Plaintiffs' other claims of breach of the duty to indemnify and for bad faith. Accordingly, it is respectfully requested that the Court grant National Fire's Cross-Motion for Summary Judgment Re: Duty to Defend, deny the Plaintiffs' Motion for Summary Judgment Re: Duty to Defend, and dismiss the action in its entirety.

## II. ANALYSIS

### A.   Summary Judgment Standard

Motions for summary judgment are governed by Fed. R. Civ. P. 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the nonmoving party fails to make such a showing on any essential element of his case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. All inferences must be drawn in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

## B.    Idaho Law on Coverage Under Insurance Policies Generally

### 1.    Contract Construction

When interpreting insurance policies, the Idaho Supreme Court applies the general rules of contract law subject to certain special canons of construction. *Clark v. Prudential Property and Cas. Ins. Co.*, 138 Idaho 538, 540-41, 66 P.3d 242, 244-45 (2003); *Mutual of Enumclaw Ins. Co. v. Roberts*, 128 Idaho 232, 235, 912 P.2d 119, 122 (1996).[2] Beginning with the plain language of the insurance policy, the first step is to determine whether or not there is an ambiguity. Where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain

---

[2]In the Court's Memorandum Order on Defendant's Renewed Motion to Transfer Venue, the Court concluded that Idaho law is "the most likely to apply." (Docket No. 12, p. 3). Given that ruling, National Fire's arguments herein are based on Idaho law. However, National Fire continues to assert that Utah or Nebraska law should apply.

meaning of the words used. Clear and unambiguous language in an insurance policy may be enforced so as to restrict coverage. *Moss v. Mid-America Fire and Marine Ins.*, 103 Idaho 298, 647 P.2d 754 (1982). The language of the Policy at issue is clear and unambiguous. Therefore, the Court must determine whether National Fire had a duty to defend Peak Asphalt in the underlying Nebraska litigation as a matter of law.

### 2.     The Duty to Defend

In Idaho, the duty to defend is not coextensive with the duty to pay damages. *Intermountain Gas Co. v. Industrial Indem. Co. of Idaho*, 125 Idaho 182, 185, 868 P.2d 510, 513 (Ct. App. 1994); *Standlee v. St. Paul Fire & Marine Ins. Co.*, 107 Idaho 899, 901, 693 P.2d 1101, 1103 (Ct. App. 1984). The duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly reveal a potential for liability that would be covered by the insured's policy. *Deluna v. State Farm Fire and Cas. Co.*, 2008 Ida. LEXIS 134 (Idaho June 1, 2008); *Amco Ins. Co. v. Tri-Spur Investment Co.*, 140 Idaho 733, 101 P.3d 226 (2004); *see also Hoyle v. Utica Mut. Ins. Co.*, 137 Idaho 367, 372, 48 P.3d 1256, 1261 (2002). "If a complaint alleges facts, which, if true, create a potential liability within coverage of a liability insurance policy, the insurer has an initial duty to defend." *Standlee*, 107 Idaho at 901, 693 P.2d at 1103; *Pendlebury v. Western Cas. & Surety Co.*, 89 Idaho 456, 464, 406 P.2d 129, 134 (1965).

An insurer's duties to defend and indemnify are separate duties. *See Hoyle*, 137 Idaho at 372, 48 P.3d at 1264. The duty to defend is broader than the duty to indemnify. *Black v. Fireman's Fund Am. Ins.,* 115 Idaho 449, 455, 767 P.2d 824, 830 (Ct. App. 1988). However, the Idaho Supreme Court has held that if there is no duty to defend, there can be no duty to indemnify. *Hoyle*, 137 Idaho at 372, 48 P.3d at 1264.

MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND  - 5

Plaintiffs assert that National Fire followed an improper procedure in rejecting Peak Asphalt's tender of defense and imply this favors a finding by the Court that National Fire breached its duty to defend. However, there is no *per se* requirement that an insurer must initially defend an action and then file a declaratory judgment action to challenge coverage. *See Construction Mgmt. Sys., Inc. v. Assurance Co. of Am.*, 135 Idaho 680, 23 P.3d 142 (2001) (affirming summary judgment granted to insurer on duty to defend based on an exclusion where insurer denied the tender of defense and insured sued the insurer after settling underlying action); *Treasure Valley Transit v. Philadelphia Indem. Ins. Co.*, 139 Idaho 925, 88 P.3d 744 (2004) (affirming summary judgment for insurer in action for breach of contract and breach of covenant of good faith and fair dealing where insurer declined to defend insured); *Hoyle v. Utica Mutual Ins. Co., supra* (affirming summary judgment to insurer that had denied tender of defense); *Magic Valley Potato Shippers v. Cont.'l Ins., supra* (affirming summary judgment for an insurer in an action for breach of contract on the basis of the applicability of an exclusion barring coverage for contract claims where the insurer refused to defend the underlying action).

There is no Idaho case authority in which a court imposed additional sanctions where an insurer denied a tender of defense and did not provide a defense while bringing a declaratory judgment action. The measure of the damages is the same regardless if an insurer initially provides a defense subject to a reservation of rights. For example in *Deluna, supra*, the insurer did not file a declaratory action when the insured demanded defense. The court in *Deluna* found a breach of the duty to defend, and concluded that proper measure of damages was attorney fees in defending the action. 2008 Idaho LEXIS 134 at * 13. In fact, no attorney fees were awarded because the insured did not retain

MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND - 6

counsel, and no penalty was assessed against the insurer. Therefore, If this Court concludes that National Fire breached the duty to defend, the proper measure of damages is the reasonable amount of attorney fees Peak Asphalt incurred in the underlying Nebraska litigation. The fact that National Fire did not initially defend the underlying Nebraska litigation is irrelevant for the Court's determination on whether National Fire breached that duty.

C. **Western's Complaint In The Underlying Nebraska Litigation Does Not Allege An "Occurrence" and Thus, National Fire Did Not Have A Duty To Defend**

Absent any applicable exclusion, the Policy applies to claims for "bodily injury" or "property damage" that is caused by an "occurrence." Blake Affidavit, Ex. L, p. 9. In the instant action, there are no allegations of "bodily injury." Therefore, the issue turns on the Policy's definition of "occurrence" and "property damage." *Id.*, pp. 20-21. The allegations of the underlying Nebraska litigation must meet both of the definitions to initially trigger the duty to defend.

1. **Western's Complaint Did Not Raise The Potential Of A Covered "Occurrence"**

In *Magic Valley Potato Shippers v. Continental Insurance, supra*, the Idaho Supreme Court addressed a circumstance where an insured (MVP) sought coverage under a comprehensive business liability policy and a comprehensive umbrella liability policy issued by Continental. 112 Idaho 1073, 739 P.2d 372. In that case, MVP had entered into a contract with seller of potatoes to purchase a quantity of potatoes. 112 Idaho 1073, 739 P.2d 372. MVP had initially picked up potatoes from the seller, but did not pay the seller. MVP notified the seller that it would not pick up the balance of the potatoes covered by the

contract alleging that the potatoes were non-conforming.  *Id.* at 1074, 739 P.2d at 373. Due to MVP's failure to perform under the sales contract, the potatoes that were not picked up deteriorated and could not be resold.  *Id.*  The seller than sued MVP for breach of contract for failing to pay for the potatoes that they picked up, breach of contract for the potatoes that they did not pick up, consequential damages, lost income, and punitive damages.  *Id.* at 1075, 739 P.2d at 374.

After the action was filed, MVP tendered the defense to Continental.  However, Continental refused to defend the suit, asserting several defenses, including that the underlying action was an action arising from contractual liability and was excluded under the policy.  *Id.*  MVP defended the suit and lost at trial.  Thereafter, MVP brought suit against Continental.  *Id.*  After summary judgment was granted to Continental, MVP appealed.

In affirming summary judgment in the favor of Continental, the Idaho Supreme Court recognized that coverage for the action that MVP sought coverage "can only be viable if [the underlying action] involved 'property damages' caused by an 'occurrence.'" *Id.* at 1076, 739 P.2d at 375.[3]  The court concluded the underlying action "was a contract action, and there was no allegation of either 'property damage' or an 'occurrence' within the meaning of the policy."  *Id.* at 1076-77, 739 P.2d at 375-76.  Additionally, the court in ***Magic Valley***

---

[3]In that case, "occurrence" was defined as: "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage."  *Id.* at 1074, 739 P.2d at 373. This is substantially similar to the definition in the Policy in the instant action.

*Potato Shippers* concluded that an exclusion for claims "assumed by [MVP] under [its] contract" with the seller precluded coverage." *Id.* at 1077, 739 P.2d at 376.[4]

Several other courts have cited the Idaho Supreme Court's decision in *Magic Valley Potato Shippers* for support of the proposition that breach of contract claims do not constitute an "occurrence." *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 582-83 (6th Cir. 2001); *The Gerrity Co. Inc. v. Cigna Property & Cas. Ins. Co.*, 860 P.2d 606, 608 (Colo. Ct. App. 1993). In *Lenning*, the Sixth Circuit affirmed summary judgment in favor of the insurer in finding there was no coverage for claims under a homeowner's policy for a lawsuit for claims characterized as breach of contract, breach of express and implied warranties, and slander of title. 206 F.3d at 582. The court in *Lenning* also concluded that there was no "occurrence" to the extent that the underlying complaint alleged property damage arising out of defective or faulty craftsmanship. *Id.*

Similarly, in *The Gerrity Co.*, the Colorado Court of Appeals affirmed summary judgment in favor of an insurer in concluding there was no coverage under a general liability policy for an underlying action arising out of the failure of a construction company to complete construction projects under various contracts. 860 P.2d 606. The court rejected the plaintiffs' argument that the underlying action alleged damages sounded in both contract and tort because the underlying action had a cause of action for negligence. *Id.* at 607. The court in *The Gerrity Co.* held, however, that "all the allegations of negligence, if proven, would amount to nothing more than a breach of contract; they do not, and cannot, allege a separate tort claim." *Id.*

---

[4] *See* Section II(D)(1) *infra* for a discussion on the applicability of a nearly identical exclusion in this action.

In the underlying litigation, Western alleged the following causes of action:   breach of contract/breach of implied covenant of good faith and fair dealing; breach of express warranty; breach of implied warranty of merchantability; breach of implied warranty of fitness for particular purpose; fraudulent representation; negligent misrepresentation; deceptive trade practices; and declaratory judgment-obligation to indemnify.   Blake Affidavit, Ex. M.   However, in Plaintiffs' Memorandum in Support of their Motion for Summary Judgment, Plaintiffs focus solely on various factual allegations of Western's complaint and omit any recognition of discussion on the specific causes of action alleged by Western in the underlying Nebraska litigation.  It is those causes of action that form the framework of the analysis at issue in the instant action and reveal the true nature of the claims that were advanced by Western.  A review of these causes of action demonstrates that Western's claims arose out of Peak Asphalt's alleged breaches under a contract to provide binder conforming with contractual specifications.  Western's alleged damages were the natural and foreseeable consequence of the breaches.  Therefore, National Fire did not have any duty to defend the underlying Nebraska litigation.

### a.   Causes of Action For Negligent Misrepresentation and Fraud Do Not Constitute An "Occurrence"

Courts, including the Ninth Circuit, have concluded that neither fraud nor negligent misrepresentation constitute an "occurrence" under a CGL policy. *Safeco Ins. Co. of Am. v. Andrews*, 915 F.2d 500 (9th Cir. 1990) (negligent misrepresentations are not "accidents" or "occurrences" for purposes of coverage in a homeowners policy); *Yegge v. Integrity Mut. Ins. Co.*, 534 N.W.2d 100 (Iowa 1995) (a home buyer's claims against contractor for breach of contract, breach of warranties, and fraud do not constitute an

"occurrence" under CGL policy); *Hawaiian Holiday Macadamia Nut Co. v. Industial Indem. Co.,* 872 P.2d 230 (Haw. 1994) (holding that an insurer had no duty to defend on a complaint alleging breach of contract and fraud).

In his January 27, 2006 letter, Mr. Thomsen stated that Western alleged a cause of action for negligence. However, Western's cause of action was actually for negligent misrepresentation. Thomsen Affidavit, Ex. E. As courts have concluded, causes of action for negligent misrepresentation and fraud are not insured causes of action. Thus, the causes of action do not trigger a potential for liability.

In his January 27, 2006 letter, Mr. Thomsen made vague allegations that Western's complaint also alleges "other conduct on the part of Peak Asphalt, LLC, which give rise to coverage." *Id.* Absent claims for fraud and negligent misrepresentation, the remainder of Western's causes of action are for breach of contract and breach of warranty based the faulty workmanship of Peak Asphalt in manufacturing or supplying non-conformity binder to Western. Even the claims for fraud and negligent misrepresentation arise out of Peak Asphalt's alleged breaches of contract. As discussed above, and consistent with Idaho Supreme Court's decision in *Magic Valley Potato Shippers, supra*, these claims did not trigger the duty to defend under the Policy.

> **b.   Western's Damages Were The Natural And Probable Consequence Of Peak Asphalt's Breach Of Contract In Allegedly Supplying Nonconforming Binder**

There is no coverage for contract based claims. *Magic Valley Potato Shippers v. Continental Insurance, supra.* "[D]amages that are the natural and ordinary consequences of faulty workmanship do not constitute an "occurrence" or "accident." *Stoneridge Dev. Co., Inc. v. Essex Ins. Co.,* 888 N.E.2d 633, 652 (Ill. App. 2008); *see*

also *Reliance Ins. Co. v. Mogavero*, 640 F. Supp. 84, 86 (D. Md. 1986) (concluding that "'occurrence' does not include the normal, expected consequences of poor workmanship."). "So long as the consequences of plaintiff's work were natural, expected, or intended, they cannot be considered an 'accident.' If there is no 'accident', there is no 'occurrence' to trigger coverage under the [CGL] policy." *H. E. Davis & Sons, Inc. v. North Pacific Ins. Co.*, 248 F. Supp. 2d 1079, 1084 (D. Utah 2002). Where it is within the insured's control to perform a contract according to its terms, "its failure to perform cannot be described as an undesigned or unexpected event." *Charles Hampton's A-1 Signs, Inc. v. American States Ins. Co.*, 225 S.W.3d 482, 488 (Tenn. App. 2006). For this reason, a "breach of contract is not generally not an accident that constitutes a covered occurrence." *Union Ins. Co. v. Hottenstein*, 83 P.3d 1196, 1201 (Colo. App. 2003). "Allowing recovery for disputes between parties in a contractual relationship over the quality of the work performed would convert [a] CGL policy into a professional liability policy or a performance bond." *Burlington Ins. Co.*, 383 F.3d at 949; *R.N. Thompson & Assoc., Inc. v. Monroe Guar. Ins. Co.*, 686 N.E.2d 160, 162 (Ind. App. 1997) ("[CGL] coverage is . . . not for contractual liability of the insured for economic loss suffered because the completed work is not what the damaged person bargained for."); *Adair Group, Inc. v. St. Paul Fire and Marine Ins. Co.*, 477 F.3d 1186, 1188 (10th Cir. 2007) ("A commercial general liability policy is not intended to provide an anticipatory guarantee of quality work.").

In *Burlington*, the Ninth Circuit applied Hawaii law and concluded that "an occurrence 'cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions.'" 383 F.3d at 949 (quoting *Hawaiian Holiday Macadamia*

MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND - 12

*Nut Co. v. Indus. Indem. Co.*, 872 P.2d 230, 234 (Haw. 1994)). In that case, a builder (Oceanic) contracted to build a residence. When the homeowners failed to pay the builder for its work, Oceanic filed suit. The homeowners then filed counterclaims against Oceanic. The counterclaim alleged five causes of action: breach of contract; breach of express and implied warranties; deceptive trade practices; negligent and/or intentional infliction of emotional distress; and punitive damages. *Id.* at 943. The homeowners alleged that Oceanic's improper design and/or construction of a house foundation resulted in structural damage to the house and retaining walls on a property. Oceanic then tendered defense of the action to its insurance company (Burlington) under a CGL policy that appears to have similar language to the Policy at issue in the instant action. *Id.* Burlington agreed to defend that action under a reservation of rights, but then filed a declaratory action. Following the parties' motions for summary judgment, the district court concluded that the claims alleged in the counterclaim were contract or contract-based tort claims which were not within the scope of coverage of the applicable CGL policy. *Id.* at 944.

On appeal, the Ninth Circuit upheld the district court's ruling. Specifically, the court addressed whether the homeowner's allegations that Oceanic "committed other acts and omissions amounting to misfeasance, malfeasance and nonfeasance" triggered the duty to defend. *Id.* at 945-46. The Ninth Circuit further recognized that the issue was one of first impression under Hawaii law. *Id.* at 944. Therefore, the court noted that it "must use [its] best judgment to predict how the Hawaii Supreme Court would decide [the] issue." *Id.* (quoting *Helfand v. Gerson*, 105 F.3d 530, 537 (9th Cir. 1997)).[5] In concluding that the

---

[5]Similar to Idaho law, the court in *Burlington* recognized that Hawaii law provides for a "broad duty to defend arising whenever the pleadings raise a potential for indemnification

insured's acts and the resultant damage were not covered, the Ninth Circuit looked to the rationale underlying a CGL policy and the "well established" distinction between tort and contract law. *Id.* at 947. The court in *Burlington* concluded that a CGL policy is "not designed to provide contractors and developers with coverage against claims their work is inferior or defective. The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer." *Id.* at 948 (quoting *Anthem Elec., Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049, 1057 (9th Cir. 2002)). The Ninth Circuit court concluded this rationale was consistent with public policy, the goal of preserving the distinction between tort law and contract, and the "distinct objectives underl[ying] the remedies created in each area." *Id.* at 947-51. The Ninth Circuit concluded:

> Though certain allegations in the homeowners' counterclaim are couched in terms of negligence, it is undisputed that Oceanic had entered into a contract to construct a home for the homeowners. The counterclaim then alleges that Oceanic breached its *contractual duty* by constructing a residence "substantially inferior to the standard of care and quality which had been agreed." Other than a breach of that contractual duty, the facts in this case do not reflect a breach of an independent duty that would otherwise support a negligence claim.

*Id.* at 948 (emphasis in original).

In *Burlington*, the court also rejected Oceanic's reliance on *Anthem Electronics, supra*. First, the Ninth Circuit rejected the insured's argument that Hawaii law would no longer conclude that contract and contract-based tort claims were not within the scope of

---

liability of the insurer to the insured." *Id.* at 944 (citation omitted). Notwithstanding the "broad duty to defend," the court in *Burlington* still reached the conclusion that the allegations of the counterclaim of "other acts" on the part of the insured did not trigger the duty to defend.

CGL policies. *Id.* at 949-50. In so doing, the insured argued that the Hawaii federal case that reached such a conclusion relied on a California case had been implicitly overruled by *Vandenberg v. Superior Court*, 982 P.2d 229 (Cal. 1999). *Id.* at 950.[6]   The Ninth Circuit rejected the argument because "Oceanic reads too deeply into *Vandenberg*." *Id.* The Ninth Circuit concluded that the basis of the *Vandenberg* "was not that a breach of contract could constitute an occurrence under a CGL policy." *Id.* Rather, the court's focus in *Vandenberg* was the phrase in the insurance policy "legally obligated to pay as damages." *Id.* The court in *Burlington* reasoned that "while the phrase was broad enough to include damages for breach of contract or tort, the court [in *Vandenberg*] stressed that its interpretation of the phrase did not extend to "limitations imposed by other terms of the coverage agreement (e.g. bodily injury and property damage *caused by an occurrence*.)". *Id.* (citation omitted).

Second, the Ninth Circuit stated that "[u]nlike California however, Hawaii has not rejected the distinction between contract and tor-based claims." *Id.* at 951.   The court recognized that the Hawaii Supreme Court had stated that "allowing tort recovery based on a breach of contract 'unnecessarily blurs the distinction between – and undermines the discrete theories of recovery relevant to – tort and contract law." *Id.* (citation omitted).

In addition to the Ninth Circuit in *Burlington*, other courts have recognized that the term "'occurrence' does not include the normal, expected consequences of poor workmanship." *Reliance Ins. Co. v. Mogavero*, 640 F. Supp. 84, 86 (D. Md. 1986) (the defects in a renovation of an apartment complex were "the normal, expected

---

[6]The case from the District of Hawaii was *WDC Venture v. Hartford Accident and Indem. Co.*, 938 F. Supp. 671 (D. Haw. 1996).

consequences" of the insured's poor workmanship, and they could not be termed an "accident"); *H. E. Davis & Sons*, *supra*, 248 F. Supp. 2d at 1084 (concluding that the insured "could *foresee* the natural consequences of its action," namely, removal and replacement of its nonconforming work and the work of others affected by it, and thus there was no "occurrence" and the insurer did not have any duty to defend); *Charles Hampton's A-1 Signs*, 225 S.W.3d at 488 (concluding that "[p]erformance of [a] contract according to the terms specified therein [is] within [the insured contractor's] control and management and its failure to perform cannot be described as an undesigned or unexpected event"); *see also Hartford Cas. Co. v. Cruse*, 938 F.2d 601, 604-5 (5[th]Cir.1991) ("A comprehensive general liability policy does not cover this cost of doing business. A builder who fails to abide by the specifications of a contract, for example by substituting a weaker building material, may by that breach produce expected property damage to his or her work, and may thus fail to show a covered 'occurrence.'").

Further, courts have concluded that CGL coverage does not extend to what are essentially warranty claims for the insured's own faulty work. *Minergy Neenah LLC v. Rotary Dryer Parts, Inc.*, No. 05-C-1181, 2006 U.S. Dist. LEXIS 68029 (E.D. Wis. Sept. 20, 2006) (citing *Bulen v. West Bend Mut. Ins. Co.*, 371 N.W.2d 392, 393 (Wis. 1985)). "Instead, the quality of the insured's work is a fundamental 'business risk' assumed by the insured itself." *Id.; see also Anthem Electronics*, 302 F.3d at 1057 (recognizing that "the risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer"). Thus, while an insured's own work is not covered, coverage may extend to damage to property other than the project an insured is working. *Id.* If the insured were relieved of responsibility for

risks it can guard against, "the insured would not be discouraged from defective workmanship." *New Hampshire Ins. Co. v. Vieira*, 930 F.2d 696, 701 (9th Cir. 1991).

Consistent with its decision in *Magic Valley Potato Shippers, supra*, and with the above case authority, the Idaho Supreme Court would conclude in this case that the applicable Policy would not cover the foreseeable consequences of Peak Asphalt's faulty manufacturing or supplying of non-conforming binder. According to the Idaho Supreme Court, "[a]n accident is an unexpected event which is the result of unintentional conduct or an intentional act which results in unexpected consequences." *State Farm Fire and Cas. Co. v. Doe*, 130 Idaho 693, 696, 946 P.2d 1333, 1336 (1997). In that case, the court analyzed whether a daycare provider's insurance policy required the insurer to defend her against a claim stemming from her son's sexual abuse of children in her care. The insurance policy provided coverage for claims of "bodily injury or property damage . . . caused by an occurrence," with "occurrence" defined as "an accident, including exposure to conditions, which results in: a. bodily injury; or b. property damage during the policy period." The court concluded that the "intentional conduct, with consequences that could be expected, [could not] be characterized as an accident. *Id.* Therefore, there was no 'occurrence' within the meaning of the policy." *Id.* As a result, the Idaho Supreme Court would recognize that an act causing "natural and foreseeable results" does not constitute an "occurrence." *See e.g., H. E. Davis & Sons*, 248 F. Supp. 2d at 1084.

The Ninth Circuit's decision in *Anthem Electronics, supra* does not assist the Plaintiffs. As discussed above, that case was decided according to California law, which

follows a minority view finding coverage for contract or tort based contract claims.[7]   It is clear, however, that the Idaho Supreme Court would reject the California, minority view, and instead would follow the majority view articulated by the Ninth Circuit in *Burlington* and by many other courts.  *See, e.g., Reliance Ins. Co. v. Mogavero, supra*; *H.E. Davis & Sons v. North Pacific Ins. Co., supra*; *Charles Hampton's A-1 Signs, Inc v. American States Ins. Co., supra*.  If the majority view is followed, Western's allegations and causes of action for breaches of contract, or contract-based tort breaches do not constitute an "occurrence" which triggered the duty to defend.   The gravamen of Western's complaint arises out of the alleged faulty manufacture of Peak Asphalt's binder and the breach of contract by Peak Asphalt for the non-conforming binder.  Thus, the claims alleged by Western are the natural and expected consequences of Peak Asphalt's breaches.  Western's claims in the underlying litigation sets forth claims arising out of a business risk of Peak for failing to supply conforming product.

Similar to *Charles Hampton's A-1 Signs*, where the contractor agreed to provide welds of a certain strength, Peak Asphalt agreed to provide binder of a certain quality. Neither fulfilled their contractual obligation. The consequences of this breach of contract was that the binder was unfit for its intended purpose, and the asphalt that used this binder had to be removed and replaced.  The normal and expected consequences of producing a product that does not conform to the requirements of a contract would be the buyer's refusal to accept the product.  In the underlying Nebraska litigation, Western alleged that

---

[7]Indeed, in *Anthem Electronics*, the Ninth Circuit recognized that it was required to follow California law. *See also* discussion in *Burlington* of why the Ninth Circuit was required to follow California law in *Anthem Electronics*.  383 F.3d at 951.

NDOR rejected that non-conforming binder and required some sections of roadway to be removed.. These are consequences that Peak Asphalt could have expected.  As a result, Western's allegations in the underlying complaint do not allege an "occurrence" that triggered the duty to defend.

          **c.**    **Western's Complaint Did Not Contain Allegations that Peak Asphalt's Binder Caused Damage to Any Other Property, And Thus, Peak Asphalt's Defective Workmanship Is Not An "Occurrence"**

The majority view is that defective workmanship, standing alone, which results in damage only to the work product itself, is not an accidental occurrence under a CGL policy. *See Essex Ins. Company v. Holder*, 261 S.W.3d 456 (Ark. 2008) (recognizing that "[f]aulty workmanship is not an accident; instead, it is a foreseeable occurrence "); *Pursell Constr., Inc. v. Hawkeye-Security Ins. Co.*, 596 N.W.2d 67 (Iowa 1999); *L-J, Incorporated. v. Bituminous Fire and Marine Insurance Company.*, 621 S.E. 2d 33 (S.C. 2005).

With respect to the issue of "occurrence," Plaintiffs also rely on the case of *Federated Mutual Insurance Company v. Grape Vine Excavation, Inc.*, 197 F.3d 720 (5th Cir. 1999).  In that case, the subcontractor on a parking lot construction provided substandard fill which damaged the overlaying asphalt.  In that instance, the final product was the overlaying asphalt.  However, had the final product not been damaged, the court's decision may have likely been different.  Such a conclusion is illustrated by the case of *L-J, Incorporated, supra* where the court concluded that  although the deterioration to the roadways may have constituted "property damage" under the policy, the various negligent acts of the subcontractors upon which the developer based its claim did not constitute an

"occurrence" for which the CGL policy provided coverage. *Id.* 621 S.E.2d at 36. Specifically, the court in *L-J* found that the developer's claim alleged negligent construction caused damage only to the work product itself (i.e. the roadway), and that such a claim was merely one for faulty workmanship. *Id.* Since damages to the work product alone resulting from faulty workmanship could not typically be said to have been "caused by an accident or by exposure to the same general harmful conditions," the court in *L-J* held that such claims for faulty workmanship did not constitute an "occurrence" falling within the policy's coverage. *Id.*

In this case, the causes of action by Western and the claimed damages arise out of Peak Asphalt's faulty workmanship in supplying the nonconforming binder. Western's complaint did not allege damage to Western's aggregate or the road bed. The cases addressing damage for purposes of determining whether or not there has been an "occurrence" do not look to the definition of "property damage" in a CGL policy. There are no allegations of any physical injury to either the road bed or Western's aggregate. Therefore, National Fire did not have a duty to defend Peak Asphalt in the underlying action.

### 2. Western's Complaint Did Not Allege Physical Injury To Tangible Property

Under the Policy at issue, "property damage" is defined as either "physical damage to tangible property" or "loss of use of tangible property that is not injured." Blake Affidavit, Ex. L. Courts have concluded that there is no property damage where a component part is incorporated into a larger structure "unless and until the defective component causes physical injury to tangible property in at least some other part of the system." *F&H*

*Construction v. ITT Hartford Ins. Co. of the Midwest,* 118 Cal. App. 4th 364 (Cal. App. 3d Dist. 2004); *Esicorp Inc. v. Liberty Mutual Ins. Co.,* 266 F.3d 859, 863 (8th Cir. 2001). Likewise, property damage is not established where incorporation of a defective component part into a larger structure causes diminution in value of the structure. *Goodstein v. Cont'l Cas. Co.,* 509 F.3d 1042 (9th Cir. 2007); *New Hampshire Ins. Co. v. Vieira,* 930 F.2d 696 (9th Cir. 1991); *Travelco's Ins. Co. v. Eljer,* 757 N.E.2d 481 (Ill. 2001). Nor does property damage occur where one nonconforming component is combined with another component to form a third nonconforming product. *Aetna Casualty and Surety Co. v. McIlbs, Inc.,* 684 F. Supp 246 (D. Nev. 1988); *Great Am. Ins. Co. v. Vegas Constr. Co.,* 2008 U.S. Dist. LEXIS 81447 (D. Nev. 2008).

.        The case of *F&H Construction v. ITT Hartford, supra*, is instructive in that it is factually analogous to the instant case. In that case, F&H contracted to build water pumping plants for a water district. F&H subcontracted with a manufacturer who was to supply steel caps, with a load capacity of 50,000 pounds per square inch, that were to be welded onto concrete piles provided by F&H. However, the manufacturer did not supply caps with the agreed upon load capacity but rather supplied nonconforming steel caps with a load capacity of only 36,000 pounds per square inch, which was inadequate for supporting the pumping plants. F&H became aware of the defective caps after all 113 piles had been driven into the ground and 79 of the caps had been welded onto them. The evidence showed that It would have cost $30,000 to $40,000 each to remove the 79 piles. As a result, F&H chose to modify the caps by welding "stiffener ribs" to the nonconforming caps. F&H then sought to recover the cost of the modification from its insurance carrier, alleging property damage under the CGL policy, which used the "standard definition" of

MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND  - 21

property damage: "physical injury to tangible property." *Id.* at 371-72. The trial court granted the insurance company's motion for summary judgment and F&H appealed.

The appellate court affirmed the trial court's decision. In concluding there was no property damage, the court in *F & H Construction* cited to a number of cases, including the Ninth Circuit's decision in *New Hampshire Insurance Company v. Vieira*, *supra*, in support of its finding that "the prevailing view is that the incorporation of a defective component or product into a larger structure does not constitute property damage unless and until the defective component causes physical injury to tangible property in at least some other part of the system." *Id.* at 372. The court in *F & H Construction* held that the incorporation of the nonconforming caps had not *damaged* the piles; "it merely rendered the piles inadequate for their intended purpose." *Id.* at 374. Thus, there was no property damage.

*Anthem Electronics, supra* does not provide guidance on the issue of whether Western's complaint alleged physical injury to tangible property. The decision in that case turned on "loss of use of tangible property" definition of "property damage." The court in *Anthem* did not address whether there was property damage because of physical injury to tangible property.

In a majority of the cases cited by the Plaintiffs, courts found liability under a CGL policy only because, unlike in *F&H Construction,* the facts involved damage to other parts of the system into which the nonconforming component was incorporated. *See e.g.*, *Federated Mutual Ins. Co. v. Grapevine Excavation, Inc.,* 197 F.3d 720 (5th Cir. 1999) (subcontractor on parking lot construction provided substandard fill, *which damaged overlaying asphalt*); *Lee Builders, Inc. v. Farm Bureau Mutual Ins. Co.*, 189 F. Supp.2d

1212 (D. Kan. 2002) (contractor's masonry and drywall work on a school construction project was defective, resulting in numerous problems such as cracked concrete floor slabs, wet insulation, and bent and burnt flashing); *Traveler's Indemnity Co. of Am. v. Miller Bldg. Corp.,* 203 U.S. Dist. LEXIS 24300 (E.C. Va. 2003) (contractor's defective fill material caused damage *to building belonging to third party*). These cases demonstrate that alleged damage must extend beyond the component part in order to establish "property damage" under the terms of a CGL policy.

Plaintiffs suggest that Western alleged physical injury to other property when "Western Engineering's asphaltic concrete made with the defective binder had to be removed and replaced" and that "another portion [of the asphaltic concrete] was defective such that its value was decreased." Plaintiffs' Memorandum in Support of Motion for Summary Judgment, pp. 11, 18. However, there are no allegations by Western that nonconforming binder damaged either Western's aggregate or the road bed. At most, the nonconforming binder was inadequate for its intended purpose. Therefore, under the applicable policy, there was no "physical injury to tangible property" for purposes of coverage.

In fact, *Penda Corporation, supra*, a case upon which Plaintiffs rely, discussed the requirement that there must be damage beyond the insured's product. In that case, the court concluded that "[i]f the only damage caused was to the sheets, no property damage within the scope of the policy occurred." 974 F.2d at 832. However, the court in *Penda* concluded that "the possibility exists that the alleged defect in Penda's sheets caused the damaging or destruction of components other than those which Penda supplied." *Id.*

MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND - 23

Therefore, in that case, the court based its decision on the issue of "physical injury to tangible property" as to whether other parts of the system had been damaged.

Despite the foregoing, National Fire recognizes that the Policy at issue also defines property damage as "loss of use of property that is not physically injured." After analysis of this issue, National Fire will not argue that for purposes of the issue of the duty to defend only, that the allegations of the underlying action constitute "property damage." Nevertheless, National Fire maintains that for purposes of the duty to indemnity, which is not at issue in the pending motion, the damages paid in settlement by Peak Asphalt does not meet either definition of "property damage."

Notwithstanding the "loss of use" definition of "property damage," whether or not there was physical injury to tangible property is important for the application of the exclusions of the Policy, particularly the exclusion related to "impaired property or property not physically injured." As discussed below, and as recognized by the court in **Anthem Electronics**, that exclusion precludes coverage for loss of use if the finding is made that property is not physically injured.

## D.   **Exclusions In The Policy Bar Coverage For Western's Claims In The Underlying Nebraska Litigation**

Idaho law provides that an insurer is not required to defend if it can establish "that the exclusion contained in the policy is clear and unambiguous." **Construction Management Sys. Inc. v. Assurance Co. of Am.**, **supra** (affirming trial court's summary judgment holding insurer had no duty to defend). "Exclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed." **Id.** (quoting **Pacific Indem. Co v. Linn**, 766 F.2d 754 (3d Cir.

1985)).  When the facts "establish that the principal action is one which comes within the exclusionary provisions or the policy, the insurer is under no obligation to defend." ***Shields v. Hiram C. Gardner, Inc.***, 92 Idaho 423, 437, 444 P.2d 38, 52 (1968).

In this case, there are several exclusions that unambiguously exclude coverage, and thus, National Fire did not have any duty to defend Peak Asphalt in the underlying Nebraska litigation.

### 1.    Western's alleged claims are barred from coverage by the contractual liability exclusion

With respect to contractual claims, the Policy at issue provides as follows:

#### b.    Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)    That the Insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement . . .

Blake Affidavit, Ex. L, pp. 9-10.

As discussed above, the claim for fraud and negligent misrepresentation are also excluded since they are not "occurrences."  The underlying Nebraska litigation arose out of alleged breaches of contract by Peak Asphalt when it allegedly supplied non-conforming binder to Western.  The claims of in the underlying litigation are contract based, or tort-based contract claims which are not "occurrences." ***See, e.g., Burlington Ins. Co., supra***.

MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND - 25

In *Magic Valley Potato Shippers v. Continental Insurance, supra*, the Idaho Supreme Court upheld summary judgment in favor of an insurer (MVP) based on an exclusion that appears to be identical to exclusion contained in the Policy at issue. The Idaho Supreme Court concluded that "from its clear wording, the insurance policy excludes coverage to MVP of 'liability assumed by the *insured* under any contract or agreement." *Id.* at 1076, 739 P.2d at 375 (emphasis in original).  The Idaho Supreme Court held the liability in the underlying litigation was "assumed by [MVP] under [its] contract" with Harper, and thus the contract exclusion was applicable." *Id.* at 1077, 739 JP.2d 376.

Even if this Court concludes that the causes of action constitute an "occurrence," the contractual liability exclusion precludes coverage.  The claims of Western, and the damages alleged, flowed from the alleged failure of Peak Asphalt to supply conforming binder.  Such damages which Peak Asphalt may therefore be liable would be incurred by assumption of liability of a contract.  Therefore, based on this exclusion, National Fire did not have any duty to defend Peak Asphalt in the underlying litigation.

## 2.    Damage to Impaired Property or Property Not Physically Injured Exclusion Bars Coverage

As discussed above, there are no allegations in Western's complaint that its aggregate suffered physical injury when it was combined with Peak Asphalt's binder.  Nor are there allegations that the road bed suffered physical injury by the use of asphalt containing the allegedly nonconforming binder.  However, even if the binder caused the loss of use of other property for purposes of establishing "property damage," exclusion (m) bars coverage for the underlying litigation.

MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND  - 26

Exclusion (m) of the Policy provides:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Blake Affidavit, Ex. L, p. 11.

> "Impaired property" is defined as:
>
> [T]angible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> **b.** You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
> **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or
>
> **b.** Your fulfilling the terms of the contract or agreement.

*Id.*, p. 19.

MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND  - 27

In **Anthem Electronics, supra**, the Ninth Circuit analyzed the applicability of an exclusion with the exact same language.  In that case, the plaintiff admitted that the exclusion would apply "but for its exception saving coverage for some claims."  302 F.3d at 1059.  The plaintiff argued that the loss of use of the scanner "arose out of the sudden and accidental *physical damage* to their circuit boards *after* they had been put to use."  **Id.** (emphasis added).  The complaint in that case stated that "the circuit boards were defective, specifying that physical defects in the boards caused their 'intermittent failure.'"  **Id.**  The court also noted that the insurer had examined diagnostic reports that detailed the failures of the boards.  Therefore, the court in **Anthem** reasoned that "[t]he nature of the physical damage described separation only upon the thermal stressing, strongly suggests that the damage may have occurred suddenly."  **Id.** at 1060.  Thus, the court in **Anthem** concluded that the exception to the exclusion applied and did not excuse the insurer from defending the action.

In the underlying Nebraska litigation, however, there were no allegations in Western's complaint that any loss of use of either Western's aggregate or the road bed was caused by the physical injury to Peak Asphalt's product after it had been put to use in the aggregate on the road bed.  The allegations of the complaint stated that the binder was non-conforming.  In addition, correspondence provided to National Fire also indicated that binder was non-conforming at the time it was supplied to Western.  **See** Thomsen Affidavit, Ex. B.  There were no allegations that the binder had any physical injury after it had been put to use.

Unlike the circumstances in **Anthem**, any failure of Peak Asphalt's product occurred at the time of the faulty manufacturing.  As a result of the alleged faulty manufacture, the

binder was not fit for its intended purpose.  Under the circumstances of the case, the

exception to exclusion (m) is inapplicable.  Therefore, exclusion (m) bars coverage for the

underlying litigation.

### 3.   Recall of Products, Work or Impaired Property Exclusion

Pursuant to exclusion (n) of the applicable Policy, which governs the recall of

products, work or impaired property:

> Damages claimed for any loss, cost or expense
> incurred by you or others for the loss of use, withdrawal,
> recall, inspection, repair, replacement, adjustment,
> removal or disposal of:
>
> **(1)**   "Your product";
>
> **(2)**   "Your work"; or
>
> **(3)**   "Impaired property";
>
> If such product, work, or property is withdrawn or
> recalled from the market or from use by any person or
> organization because of a known or suspected efect,
> deficiency, inadequacy or dangerous condition in it.

Blake Affidavit, Ex. L, p.11.

Courts addressing a nearly identical exclusion have concluded in analogous

circumstances that this exclusion bars coverage.  *See West Am. Ins. Co. v. Endel*

*Lindepuu*, 128 F. Supp. 2d 220 (E.D. Pa. 2000); *Tweet/Garot-Agust Winter, LLC v.*

*Liberty Mut. Fir. Ins. Co.*, 2007 U.S. Dist. LEXIS 9262 (E.D. Wis. Feb. 7, 2007).  For

example, in *Endel*, the court addressed a situation wherein a subcontractor installed doors

and windows on behalf of a builder of homes.  The homeowners subsequently brought a

class action lawsuit on allegations that the builder had misrepresented the quality and

suitability of the doors and windows in their homes and that the subcontractor had

MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY
JUDGMENT RE: DUTY TO DEFEND AND MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND  - 29

negligently installed them.  128 F. Supp. 2d at 223-24.  In that case, the subcontractor had a CGL policy issued by the defendant.  The issue in the case was whether the policy afforded the subcontractor coverage for the claims of the homeowners.  *Id.* at 223.

In analyzing an exclusion that appears to be similar to exclusion (n) of the Policy at issue here, the court in **Endel** noted that the class action complaint alleged claims for negligent installation of the windows and doors, consumer fraud, and negligent misrepresentation.  *Id.* at 228.  Despite testimony from an expert that the negligent installation of windows resulted in damage and degradation over time in the windows, the court concluded that the exclusion similar to exclusion (n) barred coverage.  The court reasoned that the windows and doors were the subcontractor's "work" or property other than his own that is less usable which would constitute "impaired property."  *Id.* at 229.  Therefore, the court found that the exclusion barred coverage.  *Id.*

Similarly, in **Tweet/Garot**, the court concluded that an exclusion similar to exclusion (n) barred coverage.  In that case, a company contracted to install pipes and valves in the heating a cooling system for a football stadium.  After the installation, maintenance staff for the stadium discovered that some of the installed valves leaked, which caused damage to stadium property such as carpet, couches, seats, and drywall.  2007 U.S. Dist. LEXIS 9262 at *2-3.  In addition to replacing the leaky valves, the football team and the general contractor ordered the installation company to replace the remaining valves even though none of the values had leaked or caused damage.  *Id.* at *3.  The repair costs also included tearing out portions of the stadium and repairing the torn-out areas.  *Id.*  In determining whether a CGL policy extended coverage for the replacement costs for the

valves that did not leak, the court examined the applicability of several exclusions, including one nearly identical to exclusion (n) of the instant policy.

In concluding that the claim fell under the exclusion, the court noted that the exclusion is "concerned with preventative actions and anticipated losses" and "is designed to exclude coverage for expenses incurred when the insured's work, believed to be defective or deficient, is either temporarily or permanently withdrawn from use so as to prevent anticipated losses arising from the defect or deficiency." *Id.* at *27. The court concluded that the exclusion applied because the insured had withdrawn the valves from its work and replaced them because "they were thought to be defective." *Id.* at *28.

In the underlying Nebraska litigation, Western alleged that the NDOR required the removal of sections of the road that contained non-conforming binder. This allegation fits precisely in the exclusion's language barring coverage. Further, Western's other claims also relate to the expenses from NDOR's rejection of the non-conforming binder. Therefore, exclusion (n) bars coverage for Western's claims.

### 4.    Damage to Property Exclusion Bars Coverage

The policy also contains an exclusion of "damage to property" exclusion (j) which provides in pertinent part:

> "Property damage" to:
>
> **(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

Blake Affidavit, Ex. L, p. 11.

> "Your work" is defined as:

> **22.**   "Your work":

>   **a.**   Means:

>     **(1)**   Work or operations performed by you or on your behalf; and

>     **(2)**   Materials, parts or equipment furnished in connection with such work or operations.

>   **b.**   Includes:

>     **(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

>     **(2)**   The providing of or failure to provide warnings or instructions.

*Id.*, pp. 21-22.

Research did not reveal any case authority that would assist the Court's analysis on this particular exclusion. However, this exclusion is applicable under an analysis of the exclusion's unambiguous language. In the instant action, the complaint in the underlying Nebraska litigation alleged that portions of the road which were paved with asphalt using the nonconforming binder would have to be removed. *See, e.g.*, Blake Affidavit, Ex. M.

Peak Asphalt's binder meets the definition of "your work" as Peak Asphalt supplied the binder that was used in the road project and the work of mixing the binder with the asphalt product for use in the paving project was performed on its behalf by Western.

Further, the allegations of the underlying complaint allege that Peak Asphalt made warranties or representations about "its work." Therefore, this exclusion bars coverage.

**E.** **If The Court Concludes That National Fire Breached Its Duty To Defend, Plaintiffs Are Entitled To Reasonable Attorney Fees, But National Fire Must Be Given A Meaningful Opportunity to Object To The Claimed Amount**

As discussed above, the proper measure for damages for the breach of the duty to defend is the attorney fees incurred in defending the underlying action. In the event the Court concludes that National Fire breached the duty to defend, National Fire should be given an opportunity to conduct discovery concerning the reasonableness of the fees. *See, e.g., Goldstein v. Continental Casualty Company*, 509 F.3d 1042, 1058, n.20 (9th Cir. 2007).

In the instant action, National Fire served Interrogatories and Requests for Production on the Plaintiffs seeking an itemization of its damages and documents to support the damages. *See, e.g.*, Affidavit of Counsel in Support of Defendant's Cross-Motion for Summary Judgment Re: Duty to Defend, ¶ 2. In response, Plaintiffs disclosed the amount of attorney fees and costs they paid to defend the action. *See*, id. ¶ 3. However, the Plaintiffs did not provide any documents to support this amount, or the reasonableness of the amount. Affidavit of Counsel in Support of Cross-Motion for Summary Judgment, ¶ 3,4.

Plaintiffs have not provided any evidence to the Court that the incurred attorney fees were reasonable. Further, National Fire does not have the sufficient factual information to oppose the Plaintiffs' claimed amount of attorney fees.

National Fire also contends that the determination of attorney fees would be premature at this point.  Pursuant to District of Idaho Local Rule 54.2, if the Court awards attorney fees, Plaintiffs must then file a petition for attorney fees.  Under the Rule, Plaintiffs are required to submit supporting documentation and National Fire would be given an opportunity to object to the amount.

### III. CONCLUSION

In order to trigger the duty to defend under the applicable Policy, the underlying Nebraska complaint must allege "property damage" caused by an "occurrence."  As set forth above, Peak Asphalt's alleged faulty manufacture of its binder does not constitute an "occurrence."  Further, various exclusions excused any duty to defend.  Accordingly, it is respectfully requested that National Fire's Cross-Motion for Summary Judgment Re: the Duty to Defend be granted, Plaintiffs' Motion for Summary Judgment Re: the Duty to Defend be denied, and the case be dismissed in its entirety.

DATED this 30th day of January, 2009.

QUANE SMITH LLP


By    /s/ Richard L. Stubbs
      Richard L. Stubbs, Of the Firm
      Attorneys for Defendant
      National Fire Insurance Co.
      of Hartford

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of January, 2009, I electronically filed the foregoing RULE 56(f) MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DUTY TO DEFEND with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following CM/ECF Registered Participant:

Curt R. Thomsen
   (cthomsen@custertel.net)
James D. Holman
   (holman@thomsenstephenslaw.com)
THOMSEN STEPHENS LAW OFFICES, PLLC
2635 Channing Way
Idaho Falls, Idaho 83404
Telephone (208) 522-1230
*Attorneys for Plaintiffs*

[ ] U.S. Mail
[X] CM/ECF System
[ ] Hand-Delivered
[ ] Overnight Mail
[ ] Facsimile (208) 522-1277


     /s/ Carsten A. Peterson
       Carsten A. Peterson